**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

JOSE JACINTO MENDEZ LUNA, JOSE ANTONIO
MARTINEZ VALLEJO, AND WILLAN ORLANDO
ORELLANA MENDOZA, *individually and on behalf*
*of others similarly situated,*

                                       *Plaintiffs*,

                  -against-

234 EAST 4TH STREET RESTAURANT, CORP.
(d/b/a SECARA RESTAURANT), ADOLFO TORO,
and CHRISTIAN CAICEDO,

                                   *Defendants.*
---------------------------------------------------------------X

**17-cv-03164-KPF**

**DECLARATION OF**
**MICHAEL FAILLACE,**
**ESQ. IN SUPPORT OF**
**PLAINTIFFS' MOTION**
**FOR DEFAULT**
**JUDGMENT**

Michael Faillace, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I represent the Plaintiffs Jose Jacinto Mendez Luna, Jose Antonio Martinez Vallejo, and Willan Orlando Orellana Mendoza ("Plaintiffs"), in this lawsuit for unpaid wages, liquidated damages, and attorneys' fees under the FLSA and New York Labor Law and regulations.

2.      I submit this affirmation in support of Plaintiffs' application for a default judgment against defendants 234 East 4th Street Restaurant, Corp. (d/b/a Secara Restaurant), Adolfo Toro, and Christian Caicedo (collectively, "Defendants") pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b).

### Procedural History

3.      Plaintiffs commenced this action by filing the Complaint (and associated documents) on April 28, 2017.

4.      On October 13, 2017 Plaintiffs filed an amended complaint. A true and correct copy of the First Amended Complaint is attached hereto as **Exhibit A**.

5.      This is an action for unpaid minimum and overtime wages, spread of hours pay, unlawful deductions from tips, liquidated damages, interest, costs and attorneys' fees under the Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq.*, the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. *See* **Exhibit A**, generally, First Amended Complaint, for description of the nature of the claims.

6.      The Court has subject matter jurisdiction of the Plaintiffs' federal claims pursuant to 29 U.S.C. §§ 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction). *See* **Exhibit A**.

7.      Defendant 234 East 4th Street Restaurant, Corp. (d/b/a Secara Restaurant) was served with process on October 31, 2017.  Defendant Adolfo Toro was served with process on October 28, 2017.  Defendant Christian Caicedo was served with process on October 26, 2017. True and correct copies of the proof of service for Defendant 234 East 4th Street Restaurant, Corp. (d/b/a Secara Restaurant) and Individual Defendants Adolfo Toro and Christian Caicedo are attached hereto as **Exhibit B**, **Exhibit C**, and **Exhibit D**, respectively.

8.      Defendants did not answer or otherwise respond to the Complaint.

9.      Defendants Adolfo Toro and Christian Caicedo are neither infants nor incompetents.

10.     Defendants Adolfo Toro and Christian Caicedo are not in the active service of the United States military.

11.     Plaintiffs moved for entry of default on February 7, 2018. The Clerk of the Court then noted defaults against 234 East 4th Street Restaurant, Corp. (d/b/a Secara Restaurant), Adolfo

2

Toro, and Christian Caicedo on February 9, 2018. True and correct copies of the Clerk's Certificates of Default are attached hereto as **Exhibit E**, **Exhibit F** and **Exhibit G**.

12.     The declarations of Jose Jacinto Mendez Luna, Jose Antonio Martinez Vallejo, and Willan Orlando Orellana Mendoza in support of this motion for default judgment are annexed as **Exhibit H, Exhibit I**, and **Exhibit J**, respectively.

### Statement of Facts Supporting Entry of Judgment

13.     As alleged in the Complaint and as stated in Plaintiffs' declarations, Defendants owned, operated, and controlled a Latin American Restaurant located at 234 East 4th Street, New York, New York 10009, under the name Secara Restaurant. **Exhibit A** ¶ 2; **Exhibit H** ¶ 4; **Exhibit I** ¶ 4; **Exhibit J** ¶ 4.

14.     Plaintiffs are former employees of Defendants.  **Exhibit A** ¶¶ 1, 36; **Exhibit H** ¶ 3; **Exhibit I** ¶ 3; **Exhibit J** ¶ 3.

15.     Defendants had the power to hire and fire Plaintiffs, controlled Plaintiffs' terms and conditions of employment, and determined the rate and method of Plaintiffs' compensation. **Exhibit A** ¶ 33; **Exhibit H** ¶ 5; **Exhibit I** ¶ 5; **Exhibit J** ¶ 5.

16.     Defendants had employees who handled and used goods that were produced outside the State of New York and travelled through interstate commerce.  **Exhibit A** ¶¶ 35, 39, 57; 75; **Exhibit H** ¶ 11; **Exhibit I** ¶ 11; **Exhibit J** ¶ 11.

17.     In each year from 2015 until 2016, Defendants had a gross volume of sales that exceeded $500,000 **Exhibit A** ¶ 34; **Exhibit H** ¶ 12; **Exhibit I** ¶ 12; **Exhibit J** ¶ 12.

18.     Defendants regularly required Plaintiffs to work more than 40 hours per week without paying them minimum wage compensation and/or overtime compensation. **Exhibit A ¶¶ 5, 15, 92; Exhibit H ¶¶ 13-20; Exhibit I ¶¶ 13-18; Exhibit J ¶¶ 13-20.**

### Plaintiff Jose Jacinto Mendez Luna

19.     Plaintiff Jose Jacinto Mendez Luna ("Plaintiff Mendez") was employed by Defendants as a cook from approximately September 2, 2015 until on or about December 23, 2016. **Exhibit A ¶¶ 19, 37-38; Exhibit H ¶ 8.**

20.     Plaintiff Mendez's work did not require discretion or independent judgment. **Exhibit A ¶ 40; Exhibit H ¶ 10.**

21.     From approximately September 2, 2015 until on or about February 2016, Plaintiff Mendez worked from approximately 1:30 p.m. until on or about 12:00 a.m. Mondays through Fridays and from approximately 9:30 a.m. until on or about 1:00 a.m. on Saturdays and Sundays (typically 83.5 hours per week). **Exhibit A ¶ 42; Exhibit H ¶ 14.**

22.      From approximately March 2016 until on or about December 23, 2016, Plaintiff Mendez worked from approximately 3:00 p.m. until on or about 11:00 p.m. Tuesdays through Fridays and from approximately 11:00 a.m. until on or about 12:00 a.m. on Saturdays and Sundays (typically 58 hours per week). **Exhibit A ¶ 43; Exhibit H ¶ 15.**

23.     Throughout Plaintiff Mendez's entire employment, Defendants paid him his wages in cash. **Exhibit A ¶ 44; Exhibit H ¶ 16.**

24.     Throughout Plaintiff Mendez's entire employment, Defendants paid him a fixed weekly salary of $800.00. **Exhibit A ¶ 45; Exhibit H ¶ 17.**

25.     However, for a period of four weeks in approximately mid to late 2016, Defendants failed to pay Plaintiff Mendez his weekly wages and thus owe him $3,200.00. **Exhibit A** ¶ 46; **Exhibit H** ¶ 18.

26.     Plaintiff Mendez's pay did not vary even when he was required to arrive earlier or work a longer day than his usual schedule.  **Exhibit A** ¶ 47; **Exhibit H** ¶ 19.

27.     For example, from approximately September 2, 2015 until on or about February 2016, Defendants required Plaintiff Mendez to start working 30 minutes prior to his scheduled start time and continue working past his scheduled departure time on numerous occasions, and did not pay him for the additional time he worked. **Exhibit A** ¶ 48.

28.     Defendants did not provide Plaintiff Mendez with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL § 195(1). **Exhibit A** ¶ 53; **Exhibit H** ¶ 24.

29.     Further, Defendants did not provide Plaintiff Mendez with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked. **Exhibit A** ¶ 52; **Exhibit H** ¶ 22.

30.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mendez regarding overtime and minimum wages under the FLSA and NYLL. **Exhibit A** ¶ 50; **Exhibit H** ¶ 26.

**Jose Antonio Martinez Vellejo**

31.     Plaintiff Jose Antonio Martinez Vellejo ("Plaintiff Martinez") was employed by Defendants as a food runner and busboy from approximately November 20, 2016 until on or about December 24, 2016.  **Exhibit A** ¶¶ 54-55; **Exhibit I** ¶¶ 8-9.

5

32.     Plaintiff Martinez was also required to spend a significant portion of his work day performing non-tip duties such as sweeping, mopping, and stocking supplies. **Exhibit A ¶¶** 4, 56; **Exhibit I ¶** 9.

33.     Plaintiffs Martinez's work did not require discretion or independent judgment. **Exhibit A ¶** 58; **Exhibit I ¶** 10.

34.     From approximately November 20, 2016 until on or about December 24, 2016, Plaintiff Martinez worked from approximately 4:00 p.m. until on or about 12:30 a.m. or 1:00 a.m. Tuesdays through Fridays and from approximately 11:00 a.m. until on or about 12:30 a.m. or 1:00 a.m. Saturdays and Sundays (typically 62.5 hours per week). **Exhibit A ¶** 60; **Exhibit I ¶** 14.

35.     Throughout Plaintiff Martinez's entire employment, Defendants did not pay him any wages, but instead only paid him in cash tips. **Exhibit A ¶** 61; **Exhibit I ¶** 15.

36.     Specifically, for the first two weeks of his employment, Defendants told Plaintiff Martinez that they would pay him $7.50 per hour and gave him checks and pay stubs; however, the checks bounced and he did not receive any of his wages. **Exhibit A ¶** 62; **Exhibit I ¶** 16.

37.     Defendants did not provide Plaintiff Martinez with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL § 195(1). **Exhibit A ¶** 69; **Exhibit I ¶** 21.

38.     Further, Defendants did not provide Plaintiff Martinez with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked. **Exhibit A ¶** 67; **Exhibit I ¶** 19.

39.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Martinez regarding overtime and minimum wages under the FLSA and NYLL. **Exhibit A ¶ 68; Exhibit I ¶ 20.**

### Willan Orlando Orellana Mendoza

40.     Plaintiff Willan Orlando Orellana Mendoza ("Plaintiff Orellana") was employed by Defendants from approximately July 2016 until on or about December 24, 2016.  **Exhibit A ¶ 71; Exhibit J ¶¶ 8-9.**

41.     Defendants ostensibly employed Plaintiff Orellana as a waiter, bartender, busboy, host, and bookkeeper. **Exhibit A ¶ 72; Exhibit J ¶ 9.**

42.     However, Plaintiff Orellana was also required to spend a significant portion of his work day performing non-tip duties such as sweeping, mopping, and stocking supplies. **Exhibit A ¶¶ 4, 73; Exhibit J ¶ 9.**

43.     Although Plaintiff Orellana was ostensibly employed as a tipped worker, he spent over 20% each day performing non-tip work throughout his employment with Defendants. **Exhibit A ¶ 74.**

44.     Plaintiffs Orellana's work did not require discretion or independent judgment. **Exhibit A ¶ 76; Exhibit J ¶ 10.**

45.     From approximately July 2016 until on or about December 24, 2016, Plaintiff Orellana worked from approximately 2:00 p.m. until on or about 12:30 a.m. or 1:00 a.m. Tuesdays through Fridays and from approximately 12:00 p.m. until on or about 12:30 a.m. or 1:00 a.m. on Saturdays and Sundays (typically 68.5 hours per week). **Exhibit A ¶ 78; Exhibit J ¶ 14.**

7

46.     Throughout Plaintiff Orellana's entire employment, Defendants paid him his wages by personal checks and company checks. **Exhibit A** ¶ 79; **Exhibit J** ¶ 15.

47.     From approximately July 2016 until on or about November 12, 2016, Defendants paid Plaintiff Orellana a salary of $800.00 per week that included his wages and tips.  For example, if Plaintiff Orellana made $300.00 in tips, Defendants paid him $500.00 in wages. **Exhibit A** ¶ 80; **Exhibit J** ¶ 16.

48.     From approximately November 12, 2016 until on or about December 24, 2016, Defendants failed to pay Plaintiff Orellana any wages. **Exhibit A** ¶ 81; **Exhibit J** ¶ 17.

49.     Additionally, three of the paychecks that Defendants gave Plaintiff Orellana bounced and Plaintiff Orellana never received those wages.  Accordingly, Defendants owe Plaintiff Orellana approximately $4,500.00 in wages and tips. **Exhibit A** ¶ 82; **Exhibit J** ¶ 18.

50.     Plaintiff Orellana's pay did not change even when he was required to stay later or work a longer day than his usual schedule. **Exhibit A** ¶ 83; **Exhibit J** ¶ 19.

51.     Defendants did not provide Plaintiff Orellana with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL § 195(1). **Exhibit A** ¶ 90; **Exhibit J** ¶ 23.

52.     Further, Defendants did not provide Plaintiff Orellana with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked. **Exhibit A** ¶ 88; **Exhibit J** ¶ 21.

53.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Orellana regarding minimum wages under the FLSA and NYLL. **Exhibit A** ¶ 89; **Exhibit J** ¶ 22.

## **Plaintiffs are entitled to Judgment by Default**

54.     It is well settled that Defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (citation omitted).

55.     Defendants have failed to file an answer or otherwise respond to the Complaint, despite the time to do so having expired. Thus, Plaintiffs' allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiffs' right to default judgment.

56.     Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing.  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).   "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages**,** such a hearing is not mandatory."  *Id.*  "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'"  *Id.* (quoting *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)).

57.     Plaintiffs maintain that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiffs have put forward, damages, including back pay, liquidated damages, prejudgment interest, should be awarded in the

amount of $196,647.35, and attorneys' fees and costs should be awarded in the amount of $7,993.65.

## **Plaintiffs' Damages Calculation**

58.     Annexed as **Exhibit K** is a chart setting out the damages Plaintiffs are entitled to recover.

59.     In the damages chart, the Plaintiffs' wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods."  Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiffs' affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiffs (the "Credited Weekly Pay") for each period, then dividing that amount by the "Hours Per Week in Period"). The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculations later in the chart.  The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiffs' affidavits. The information the number of days each week in that period for which the Plaintiffs worked in excess of 10 hours per day is also included, and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period").

60.     *Calculations within the Chart* – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiffs should have been paid per week during each pay period.  The actual formula used in this column is as follows:((greater of minimum wage or calculated base pay) *

10

Hours Per Week up to 40) + ((greater time and a half rate) * (Hours Per Week over forty, if any)). Moreover, the "Bounced Payments" column is the amount of money that Defendants gave Plaintiffs by check, but where the checks bounced.

61.     The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it.  If it does not, it uses it for the subsequent calculations (as the Plaintiffs are entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40.   The Chart then subtracts the amount actually paid to Plaintiffs (the "Credited Weekly Pay") and then derives the "Underpayment per Week."  This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT").  The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT" by 25% for damages occurring prior to April 9, 2011 and 100% for any subsequent damages.

62.     The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is derived by multiplying (the number of SOH days per week) * (the number of weeks per period) * (the minimum wage).  The liquidated damages on SOH pay are all calculated at the rate of 100%.

63.     The legal basis for the damages calculations within the chart are set out below.

**Back Pay**

64.     At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour.  Employees must be paid one-and-one half times their regular

11

rate for each hour worked over forty (40) hours worked in a week.  29 U.S.C. § 207(a)(1). The New York Minimum wage range increased to $8.75 per hour as of December 31, 2014, and it further increased to $9.00 per hour as of December 31, 2015.  New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week.  12 N.Y.C.R.R. § 142-2.2.

65.    The onus is on the employer to maintain proper records of employees' hours worked, 29 U.S.C. § 211(c).  "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v. Jen Chu Fashion Corp*, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court accepted the Plaintiffs' estimates of hours worked).

> An employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated[,] and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), and other cases).

66.    Here, Plaintiffs were not paid minimum wage compensation at the lawful rate. Rather, Plaintiffs Mendez and Orellana received a fixed weekly salary throughout their entire employment with Defendants that did not vary depending on whether they had worked in excess of ten hours in a day or their scheduled hours, while Plaintiff Martinez received no wages whatsoever and instead only received weekly cash tips. *See* **Exhibit K**.

67.     Where an employee receives a straight weekly salary, there is a rebuttable presumption under the FLSA that the salary covers 40 hours worked.  Therefore, to determine the regular rate, the weekly salary is divided by 40 hours. *Moon v. Kwon*, 248 F.Supp.2d 201, 207-08 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F.Supp.2d 308, 317 (S.D.N.Y. 1999); *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 385 (E.D.N.Y. 2012).

68.     Further, under the New York Hospitality Industry Wage Order, the regular rate for a restaurant employee who is not paid on an hourly basis is determined by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  12 NYCRR §146-3.5 (2013).

69.     Accordingly, to determine the Plaintiffs' unpaid minimum wages, Plaintiffs' regular rate is determined by dividing their weekly salary by their actual hours worked per week. Then the regular rate is multiplied by 1.5 to determine the overtime rate the Plaintiffs should have received (if applicable).

70.     Plaintiff Mendez is owed $53,145.00 in unpaid minimum and overtime wages and $3,200 from the checks that bounced. As of February 15, 2018, Plaintiff Mendez is entitled to $9,354.35 in prejudgment interest on wages and overtime. *See* **Exhibit K**.

71.     Plaintiff Martinez is owed $3,318.75 in unpaid minimum and overtime wages and $80 from the checks that bounced. As of February 15, 2018, Plaintiffs Martinez is entitled to $356.43 in prejudgment interest on wages and overtime. *See* **Exhibit K**.

72.      Plaintiff Orellana is owed $15,252.75 in unpaid minimum and overtime wages, and $2,400 from the checks that bounced. As of February 15, 2018, Plaintiffs Orellana is entitled to $1,889.91 in prejudgment interest on wages and overtime. *See* **Exhibit K**.

### Spread of Hours Pay

73.      Plaintiffs are also entitled to "spread-of-hours" pay under the New York spread-of-hours regulation, which requires employers to pay workers for an additional hour of overtime-rate pay beyond their regular pay when the workday is more than ten (10) hours.  12 N.Y.C.R.R. § 146-1.6; Angamarca v. Pita Grill 7 Inc., 2012 U.S. Dist. LEXIS 108322, *16-17, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012).

74.      As set out above, Plaintiffs Mendez, Martinez, and Orellana regularly worked more than ten hours per day throughout their entire employment.

75.      Plaintiff Mendez is entitled to $1,869.25 in unpaid spread of hours pay. As of February 15, 2018, Plaintiff Mendez is entitled to $336.55 in prejudgment interest on the unpaid spread of hours pay. *See* **Exhibit K**.

76.      Plaintiff Martinez is entitled to $90 in unpaid spread of hours pay. As of February 15, 2018, Plaintiff Martinez is entitled to $9.67 in prejudgment interest on the unpaid spread of hours pay. *See* **Exhibit K**.

77.      Plaintiff Orellana is entitled to $1,350.00 in unpaid spread of hours pay. As of February 15, 2018, Plaintiff is entitled to $168.94 in prejudgment interest on the unpaid spread of hours pay. *See* **Exhibit K**.

### Three Year Statute of Limitations Under FLSA

78.     Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years.  29 U.S.C. § 255(a).

79.     Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Damassia v. Duane Reade, Inc.*, 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal.  *See Hardrick v. Airway Freights Systems, Inc.*, 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999);  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003), *aff'd*, 126 S.Ct. 514 (2005) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

80.     In the present matter, Defendants were aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defendants knew or disregarded the fact that their conduct was prohibited by the FLSA.  Furthermore, even if the Defendants did not know of the FLSA, the Defendants' actions are still willful because the Defendants failed to investigate whether their compensation policy was legal.  *See Hardrick*, 63 F. Supp. 2d at 904.

81.     Moreover, the Defendants failed to post the required information concerning the minimum wage laws, paid the Plaintiffs in cash, and had no system for recording, or even having Plaintiffs record, their hours.  This deliberate decision to disregard both FLSA and New York law, as well as Defendants' failure to take any affirmative step towards compliance, amount to

15

willfulness for purposes of the FLSA and New York law. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005)("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages")(internal quotations omitted).

82.    As Plaintiffs can establish that Defendants' violation of the FLSA was willful, they are entitled to a three-year limitations period under the FLSA, i.e., starting from April 28, 2014, three years before the complaint was filed. *See, e.g., Decraene v. Neuhaus (U.S.A.), Inc.*, 2005 U.S. Dist. LEXIS 10836 at *23-4 (S.D.N.Y. 2005). Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness. N.Y. Labor Law § 663(3). Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA. *See Godlewska v. Human Dev. Assoc., Inc.*, 2006 U.S. Dist. LEXIS 30519, at *12 (E.D.N.Y. May 18, 2006). Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiffs' employment, which was less than six years from the filing date.

### Wage Notice and Statement Violations

83.    Defendants never provided Plaintiffs with annual notices of their wages, or a wage statement, as required by NYLL §§ 195(1), 195(3). Plaintiffs are therefore each entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000 each Plaintiff and $30,000 total for all Plaintiffs.

### Liquidated Damages

84.    Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid

16

minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional

equal amount as liquidated damages"). The employer can make this award discretionary, however,

by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Defendants have defaulted.

Consequently, they cannot meet this burden, and thus an award of liquidated damages is

mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum

wages and overtime. 29 U.S.C. § 216(b).

85.     Likewise, under the NYLL, "an employee is also entitled to liquidated damages

'equal to one hundred percent of the total of such underpayments found to be due,' unless the

employer proves a good faith basis for believing he or she was in compliance with the law." *Wei*,

2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

86.     Given the uncontroverted evidence of Defendants' lack of good faith, Plaintiffs are

entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the

unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for

any subsequent unpaid minimum and overtime wages.

87.     Plaintiffs are entitled to liquidated damages in the amount of $71,716.50 on their

unpaid minimum and overtime wages. *See* **Exhibit K**.

88.     Plaintiffs are entitled to liquidated damages in the amount of $3,309.25 on their

spread of hours wages. *See* **Exhibit K**.

## Attorneys' Fees and Costs

89.     The FLSA and the New York Labor Law both contain fee-shifting provisions for

actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition

to any judgment awarded to the Plaintiffs or Plaintiffs, allow a reasonable attorney's fee to be paid

by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

90.    Plaintiffs incurred costs and attorneys' fees in pursuing this action, and seek an award of reasonable attorney's fees and costs.

91.    The costs are a total of $634.90 including a filing fee of $400.00 and fees associated with serving the Defendants with the summons and complaint.

92.    A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as **Exhibit L**.[1]

93.    The attorneys who worked on the case are Michael Faillace and Sara Isaacson:

    i.    Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983.  From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM).   He taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law.  He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.  His regular billing rate of $450 per hour is reflected in **Exhibit L**.

---

[1] The initials PL in the billing sheet refer to work done by paralegals at the firm.  The initials marked HA reflect work done by Ms. Haleigh Amant, a law school graduating, who is awaiting admission to the Bar.

ii.     Sara Isaacson is an associate at Michael Faillace & Associates, P.C. who

has practiced litigation since 2015.  Her regular billing rate of $250 is

reflected in **Exhibit L**.

<u>Conclusion</u>

94.     Based on the above information and exhibits, Plaintiffs assert the record supports a

judgment against the Defendants in favor of Plaintiffs in the total amount of $196,647.35 for

unpaid minimum and overtime wages damages, spread of hours damages, liquidated damages,

prejudgment interest and other claims. Prejudgment interest continues to run and should ultimately

be computed through the date judgment is entered.

95.     Additionally, Plaintiffs are entitled to $7,993.65 in attorneys' fees and costs.

96.     As shown herein, no inquest is necessary when, as in the present case, the Court

has before it the proper measure of damages and evidence submitted by the Plaintiffs that allows

damages to be calculated with reasonable certainty.

97.     No part of the judgment sought has been paid.

98.     Sufficient definitive information and documentation is provided such that the

amount provided for in the proposed judgment can be calculated, based upon allegations contained

in the Complaint, and supplemented by the Plaintiffs' declarations accompanying these motion

papers.

99.     Plaintiffs also make a request for interest on the principal amount of the judgment

not to exceed 9%, as stated above and in the damages calculations.

100.    Plaintiffs also request that the judgment provide that if any amounts remain unpaid

upon the expiration of ninety days following issuance of judgment, or ninety days after expiration

of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

101.    The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

102.    A proposed form of judgment is attached as **Exhibit M**.

103.    For the reasons stated above and in the accompanying declarations and exhibits, the Plaintiffs' motion for a default judgment should be granted.

104.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
       February 15, 2018

/s/ Michael Faillace_____
   Michael Faillace, Esq.